[L. A. No. 21157.   In Bank.   Apr. 4, 1950.]

BURT MOLD, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Joseph Scott and J. Howard Ziemann for Petitioner.

Harold W. Kennedy, County Counsel, Wm. E. Lamoreaux, Deputy County Counsel, W. E. Simpson, District Attorney, Jere J. Sullivan and Robert Wheeler, Deputy District Attorneys, for Respondent.

EDMONDS, J.—Burt Mold, also known as Burt Burton, is one of those indicted with Lorenson, Weber, and 10 other persons for conspiracy to commit assault with a deadly weapon, robbery, and to pervert or obstruct justice or the due administration of the laws, all in violation of section 182 of the Penal Code.

■    The facts concerning Mold's activities in furtherance of the alleged conspiracy are fully stated in *Lorenson* v. *Superior Court, ante,* p. 49 [216 P.2d 859].   He contends, as do Lorenson and Weber, that because the indictment is unsup-

ported by any evidence, he is entitled to a writ of prohibition to restrain the superior court from proceeding, as to him, with the trial of the action.

Mold's connection with Jerome Weber is not definitely shown, but it may be inferred that their relationship was more than that of attorney and client. They were intimate friends and Mold was a frequent caller at Weber's office.

Mold was in Weber's office at the time of the attack upon Pearson. Although the arrested suspects did not arrive at the Wilshire Station until approximately 4:25, according to the testimony, Weber called the station 20 minutes earlier to inquire if anyone had been arrested in connection with a disturbance at Pearson's place of business. Upon being informed that there had been no arrest, Weber requested that the booking of any such persons be delayed until he could arrive at the station. Mold then asked Barkley, to whom he was known, if Dave Ogul and two other persons named by him had been arrested because of a disturbance of the peace or a fight. When told that no such persons had been brought into the station, Mold requested Barkley to extend every courtesy to Weber, as he and Weber were very good friends.

Considering these facts in connection with the series of events which occurred in the light of the entire circumstances, the grand jury concluded that there was probable cause for believing that Mold was connected with a general conspiracy to which Lorenson, Weber, Swan, Cohen, Wolfe, and the seven Cohen associates were parties. Certainly, there is some evidence to support that determination.

As stated in the Lorenson case, it was the duty of the grand jury to decide whether the evidence was sufficient to justify a reasonable man in suspecting that a public offense had been committed to which Mold was a party. It is Mold's contention that the only reasonable interpretation of the facts is that his presence in Weber's office at the time of the attack upon Pearson was merely an unfortunate coincidence. He argues that he took part in the conversation with Barkley only as a favor to Weber and with no knowledge of the existence of any conspiracy. The grand jury should have decided, he insists, that his inquiry as to the arrest of Ogul and the two others, the men who beat Pearson only a few minutes before the conversation, was only an ill-timed happenstance. Instead of taking this view of the evidence, the jurors conclude that there is reasonable and probable cause for believing that Mold's actions were not innocent and accidental, but a part of a broad and

general scheme to which Mold, as well as the other defendants, was a party.

Considering, as a whole, the evidence before the grand jurors, it cannot be said that the indictment voted by them was arbitrarily founded or unsupported by any evidence. Certainly, an inference that Mold's activities were done knowingly and deliberately is as reasonable as one that they merely comprise a chapter of accidents. As stated in the Lorenson case, it is the duty of the grand jury, and not of the courts, to decide which of two logical inferences should be drawn from substantial evidence tending to prove that a crime was committed. When the indictment does not rest upon arbitrary action and the evidence adduced affords some rational ground for the possibility that the person named in the indictment is guilty, a court will not prevent a trial of the defendant.

The petition for the peremptory writ of prohibition is denied, and the alternative writ is discharged.

Shenk, J., Schauer, J., and Spence, J., concurred.

CARTER, J.—I dissent.

Mold's part in the factual setting appears in my dissenting opinion in *Lorenson* v. *Superior Court, ante,* p. 49. It is apparent therefrom that there is no evidence connecting Mold with the conspiracy. He was a close friend of Weber, casually knew Cohen, and apparently, from his remarks when he took part in Weber's telephone call to the Wilshire Station, he knew some of Cohen's associates, for he mentioned them at that time. Clearly, as in the Lorenson and Weber cases, there is no evidence connecting Mold with the conspiracy.

I would, therefore, grant the writ of prohibition prayed for by him.

Gibson, C. J., and Traynor, J., concurred.